HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES P. MILLER<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL G. MORSE and THERESA B. MORSE, husband and wife, and MORSE TECHNOLOGIES, LLC,<br><br>　　　　Defendants. | Case No.C07-5642RBL<br><br>ORDER |

This matter is before the court on Plaintiff James Miller's Motion for Summary Judgment. [Dkt. #9]. Miller claims he is entitled to judgment as a matter of law in this collection action. Defendants argue that material issues of fact preclude summary judgment, including particularly the factual bases for their counterclaims and affirmative defenses, and as to the calculation of the underlying debt.

On the record before the court, Plaintiff has not established that there are no material issues of fact, or that he is entitled to judgment as a matter of law. The Motion for Summary Judgment is therefore DENIED.

**1.     Background**.

The case involves a failed business deal. Viewed in the light most favorable to the non-moving Defendants, the evidence establishes the following:

Plaintiff Miller and Defendant Morse Technologies formed a Maryland LLC, DeckLok LLC, to procure and market a patented deck building bracket, called 'DeckLok." Morse Technologies is wholly owned by the patent holder, Michael Morse.

DeckLok LLC is owned 70% by Morse Technologies and 30% by Miller. Morse and Morse Technologies are located in Maryland, and Miller is located in Washington. Miller also owns a Washington Corporation called Screw Products, Inc., or SPI.

DeckLok LLC borrowed $350,000 on a line of credit from Columbia State Bank. The Note was personally guaranteed by Miller, and Morse and Morse's wife, Theresa. For reasons which are disputed, DeckLok was unable to pay its obligations to Columbia. Columbia was apparently unwilling to re-negotiate the loan, and Morse and Miller could not agree as to how best resolve the situation. Morse caused DeckLok to file for protection under Chapter 11 of the Bankruptcy Code in Maryland, and Miller purchased the Columbia Note at a discount.

DeckLok commenced an Adversary Proceeding against Miller in the bankruptcy[1], but the result of that action, if any, has not been revealed to the court. Miller then sued Morse in Washington State court, seeking to enforce the Note and personal guaranties. Morse removed the case here, and counterclaimed for contribution, breach of contract, and breach of fiduciary duty.

Morse claims that DeckLok was unable to pay its loan obligations to Columbia as the result of Miller's insistence that it purchase a large order of DeckLok brackets from a manufacturer, which, unbeknownst to Miller, resulted in the payment of a hefty commission to Miller's brother. Morse suggests that this, rather than the best interests of the company, motivated the purchase.

The order left the company without working capital, and with an excess of DeckLok parts. Those parts were stored by Miller at his SPI facility in Washington state. There was no lease, and no agreement regarding this storage. Despite calling his facility "DeckLok West," Miller sought to impose a storage fee on DeckLok. When this fee was not paid, and after he purchased the Columbia Note, Miller sought to enforce the security interest Columbia had taken in the DeckLok brackets, and refused to permit Morse and DeckLok to market or deliver them to customers. Through his company, SPI, and its website, Miller

---

[1] Morse suggests (but makes no formal motion) that the dispute here could and perhaps should be resolved in the bankruptcy court. Miller responds that Morse is not a party to the bankruptcy or the adversary proceeding, and that he is entitled to enforce the terms of the Note and the guaranties.

ORDER
Page - 2

also marketed the DeckLok brackets himself. Because DeckLok was in bankruptcy, Miller apparently concedes his actions violated the automatic stay. The remaining DeckLok inventory is now in Morse Technologies' possession and control. The propriety of Miller's actions as they relate to the stay are within the bankruptcy court's jurisdiction.

Morse claims that DeckLok's inability to pay its loan obligations was the result of Miller's breach of the DeckLok LLC Operating Agreement and of his fiduciary duties to Morse and to the company. Morse and Morse Technologies seek damages from Miller as the result of these claims. Morse also asserts these claims as affirmative defenses and claims that Miller acted in bad faith. Morse claims that equitable defenses of estoppel, waiver and unclean hands preclude him from enforcing the Note and guaranties he purchased from Columbia.

Morse also raises an issue as to the extent of the personal guaranties. Morse points out that both Michael and Theresa Morse were required to sign personal guaranties in exchange for the Columbia loan; while Mrs. Miller was not required to sign. Though Morse has not formally sought reformation of the Note and guaranties to include Mrs. Miller, the omission may have an impact on the calculation of any debt.

Miller concedes that he is responsible for a portion of the debt, and in his initial motion sought repayment of 70% of the outstanding balance, based on the parties' respective ownership of DeckLok LLC (Miller 30%; Morse Technologies 70%). Morse responded that under Washington law guarantors are "equally" responsible for the payment of the underlying debt, and claimed that Morse should pay at most half of the debt.

Miller now argues that there are three guarantors (Miller and Michael and Theresa Morse), and that if they are equally liable, Morse should pay 66.666% of the debt. He maintains, however, that he is entitled to summary judgment on the Note and guaranties, despite the counterclaims, the adversary proceeding, the affirmative defenses, and issues raised about the calculation of the debt.

**2.  Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the

non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A. Breach of Contract and Breach of Fiduciary Duty as affirmative defenses and counterclaims.

Plaintiff's Motion is based on his claim that the terms of the Note and Guaranties are undisputed. He argues, apparently, that any damage or setoff claim by DeckLok LLC or its other owner (Morse Technologies), or the owner of Morse Technologies (Morse) can and should be litigated separately from his collection action.

There is some logical merit to this position, at least as it relates to DeckLok LLC's claims against Miller. Those claims are apparently being litigated in an adversary proceeding in the bankruptcy court in Maryland. Presumably, any damage caused by Miller to DeckLok can and will be resolved there. Unfortunately, this issue and the interplay between this action, the Morse counterclaims and the adversary proceeding in Maryland is not briefed in any detail by the parties.

Morse suggests without citation to authority, and without expressly seeking such a result, that the court might wish to consider transferring this action to the Bankruptcy court. Miller argues, also without citation or analysis, that this is not a "core proceeding" and that the bankruptcy court does not have jurisdiction over the parties or the dispute. Neither party addresses the potential for inconsistent results, or how a judgment in one case would effect the proceedings in the other. Neither party addresses the choice of law provision in the DeckLok LLC operating agreement, or how Washington or Maryland law impact Morse and Morse Technologies' affirmative defenses and counterclaims. Nor does Morse articulate how his counterclaims in this action differ from the claims asserted by DeckLok in the adversary proceeding.

Miller is correct that Morse supplies no legal authority in support of Morse's Breach of Fiduciary duty counterclaim. Miller is not correct that there is no evidentiary support for the claim that Miller acted

in furtherance of his own interests (and those of his company, SPI, and his brother) to the detriment of DeckLok and its owners. Indeed, Miller himself refers to Morse as his "partner." Morse has also established for purposes of summary judgment that Miller's conduct contributed to the LLC's inability to repay the Columbia Note, and that his conduct with respect to the DeckLok parts while they were in his possession (selling them himself, and preventing DeckLok from doing so) violated the bankruptcy automatic stay and caused damage to DeckLok.

The issue is whether Morse and Morse Technologies claims against Miller are sufficiently related to his claims against them that they would operate as defenses to his collection action. While the Morse claims are not "pure" affirmative defenses, such as payment or fraud in the inducement, if proved they do have the same effect – avoidance of some or all of Miller's claim. *See C-C- Bottlers, Ltd. v. J.M. Leasing*, 896 P.2d 1309 (1995).

In *C-C Bottlers*, the prevailing plaintiff sought attorneys fees pursuant to the promissory note. It sought fees for pursuing its collection action an for defending securities fraud counterclaims, arguing that they were tried as "affirmative defenses." The Washington Court of Appeals reiterated that there is a difference between counterclaims and affirmative defenses as a pleading matter, and held that fees were not recoverable on the counterclaim portion of the case. It also recognized that counterclaims can be used to support a claim for setoff, as the Morse defendants seek to do here:

> The trial court . . . found that although [defendant] designated its securities fraud claims as counterclaims, they were actually tried as affirmative defenses, which [plaintiff] had to overcome to obtain judgment on the promissory notes. We disagree. These counterclaims do not affect, nor are they affected by, the outcome of the promissory notes claims. [Defendant's] securities fraud claims are permissive counterclaims. Their objective was the equitable remedy of setoff, in the event [plaintiff] recovered on the notes. They did not avoid the obligation represented by the notes and therefore are not defenses; they are independent and unrelated claims asserted permissively.

*Id.* at 1311. Morse's claims here are similarly more properly characterized as counterclaims. However, if proven, they would support a setoff to Miller's recovery on the Note. The validity and amount of such a setoff cannot be determined as a matter of law on this record.

Miller's Motion for Summary Judgment on the Note is therefore DENIED.

### B.  The Amount of Miller's Contribution.

Plaintiff initially argued that the amount of his contribution to the debt should match his ownership

in the primary debtor, DeckLok - namely, 30%. While this amount has some logical appeal, Miller cites no authority for that calculation, does not discuss or even cite the DeckLok Operating Agreement or the Note or guaranties in support of this calculation. Miller does claim, in his deposition, that prior to the ultimate failure of his relationship with Morse, he had contributed additional capital to the venture, and that he was entitled to have his interest in the DeckLok LLC increased as a result. There is, however, no evidence in the record as to the amount of Miller's additional contributions, or any calculation as to how his share of the LLC should have been increased, or of the impact such a recalculation would have on the calculation of Miller's "share" of the Columbia note.

Morse cites a 1914 Washington case suggesting that guarantors are "equally liable" on their guaranties, regardless of their respective ownership in the debtor business entity. *See Brooke v. Boyd*, 80 Wash. 213, 141 P. 357 (1914). Despite its age, this case remains the law on this limited point. *See Brill v. Swanson*, 674 Wash.App. 396 (1984). Neither case, and neither party, discusses whether the fact that two of the guarantors are members of the same marital community affects this analysis.

Miller accepts the "equally liable" rule for purposes of his motion, and argues that each of the guarantors is liable for one-third of the debt. Thus, he seeks a judgment against the Morses together (as husband and wife; he does not seek judgments against them individually for 33.333% each) in an amount representing 66.666% of the amount represented by the note, plus interest.

Morse suggests, but does not analyze, that the Morses should be liable, if at all, for only half of the total amount. This position too has some logical merit, as the Morses are a marital community, more akin to a single guarantor, than they are two entirely separate[2] debtors and guarantors.

In any event, the record and the briefing on the subject of Miller's contribution to the total debt (without regard to the Defendants' setoff claims) is insufficient for the court to determine whether Miller's proper share of the Columbia Note is 30%, some larger percentage based on Miller's increased contribution to the LLC, 50%, or 66.666%. For this additional reason, the Motion for Summary Judgment is DENIED.

---

[2] Again, Morse has not sought to reform the contract to include Mrs. Miller as a guarantor. Even by Miller's calculation such reformation would result in 25% for each guarantor, or 50% per couple. There is no evidence supporting the claim, even if it were made, that the parties (and the bank) intended for Mrs. Miller to also sign a guaranty.

ORDER
Page - 6

### C. The calculation of any judgment.

Though it is not necessary given the court's analysis of the larger issues, the court will address the Morses' claim that Miller''s mathematical calculation is inaccurate. The difference between 66.66% and 66.666% of the debt plus interest is insignificant. Any minute discrepancies about the mathematical calculations (once the principal debt, the interest rate[3], and the Defendants' share of the total are determined) would not be sufficient to preclude summary judgment.

The Motion for Summary Judgment [Dkt. # 9] is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED this 30th day of June, 2008.

  /s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[3] It is clear that the note has a fixed rate after default.

ORDER
Page - 7